UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DIANA M. BAUMGARDNER, as Limited
Guardian of the Person and Property of
Stephen M. Baumgardner,

                  Plaintiff,

-vs-                                            Case No. 5:11-cv-256-Oc-10TBS

UNITED STATES OF AMERICA, and
TINA S. VERTEFEUILLE,

                  Defendant.
_____/

## O R D E R

This is a tragic case. Plaintiff Diana M. Baumgardner, the grandmother and limited guardian of Stephen M. Baumgardner, has sued the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671, *et seq.* ("FTCA"), seeking compensation for damages suffered by her grandson, Stephen, in a vehicular accident between Stephen and a United States Postal Service employee. The accident left Stephen with permanent and debilitating injuries, including serious head, back, and lung injuries.

Ms. Baumgardner contends that Postal Service employee Tina Vertefeuille negligently operated her government-issued motor vehicle while acting within the course and scope of her federal employment, thereby causing a collision between Ms.

Vertefeuille and Stephen, who at the time was driving a motor scooter.[1]  The United States has moved for summary judgment, arguing that the undisputed material facts demonstrate that Ms. Vertefeuille did not operate her motor vehicle in a negligent manner, and therefore, the United States is entitled to judgment as a matter of law (Doc. 14).  Ms. Baumgardner has filed a response in opposition (Doc. 16), and the motion is ripe for disposition.

For the reasons discussed below, the Court finds that the United States' motion for summary judgment is due to be granted.

## Undisputed Material Facts

On the afternoon of November 17, 2008, Tina Vertefeuille, a 14-year employee with the U.S. Postal Service, was delivering mail on her assigned route on South Skyway Avenue in Homossassa, Florida.  Ms. Vertefeuille was driving a U.S Postal Service-issued 2008 Jeep Wrangler, modified for mail delivery so that the driver's side was on the right-hand side.  Ms. Vertefeuille was traveling north on South Skyway Avenue, at a rate of speed of approximately 20-25 miles per hour.  She had just delivered mail to one house and was en route to the next mailbox approximately 600 feet in front of her.  At the same time, Stephen was driving a motor scooter down a long driveway running east to west from the Kingdom Hall Jehovah's Witness Church and

---

[1] Ms. Baumgardner previously asserted claims of negligent hiring, training, and supervision against the United States (Count I) and a claim of negligence against Ms. Vertefeuille directly (Count III).  These claims were dismissed on December 1, 2011 (Doc. 11).  The only claim pending is a claim for negligence against the United States.

intersecting with South Skyway Avenue on the north-bound side.  The driveway is lined on both sides by thick shrubs and tall trees, making it impossible for anyone driving on South Skyway Avenue to see the driveway until the driver is less than a car-length away from the entrance.  Stephen drove his scooter out of the driveway, without stopping, into the path of Ms. Vertefeuille's vehicle, and the vehicles collided.

Neither Party has submitted any police reports from the accident or any expert testimony shedding light on how the accident occurred.  Ms. Baumgardner also has not submitted any evidence in opposition to summary judgment.  The United States, however, has submitted the deposition testimony of the three witnesses to the accident: Ms. Vertefeuille, Stephen, and Katherine Nottingham.

Ms. Vertefeuille testified without contradiction that she was looking straight ahead, could see other cars and homes, was not speeding, and was not distracted in any way at the time of the accident; she simply did not see Stephen enter her path until the moment of collision.  On the day of the accident the roads were dry, the sun was out, and Ms. Vertefeuille was not using her cell pone at the time of the collision.  Ms. Vertefeuille further testified that she did not see the driveway for the Kingdom Hall Church as she was approaching it because the driveway was lined on both sides by the thick shrubs and tall trees.  She did not apply her brakes or take any evasive action because she did not see Stephen until the moment of impact.

Stephen was also deposed.  Unfortunately, he has no recollection of the accident or of any events that occurred on November 17, 2008.  He simply remembers

borrowing a friend's red scooter, that he was on the side of the road, and "looking up" immediately before the collision.[2]

The third witness, Katherine Nottingham, observed the entire accident from the south-bound side of South Skyway Avenue. Ms. Nottingham has lived on South Skyway Avenue for over eight years. She has driven by the Kingdom Hall Church's driveway almost every day and is very familiar with how the shrubbery and trees along the church driveway obscure the view of the driveway from vehicles traveling on South Skyway Avenue. Ms. Nottingham has no personal connection to either Ms. Vertefeuille or Stephen, and it is undisputed that she is an unbiased, objective witness.

At the time of the accident, Ms. Nottingham was traveling south on South Skyway Avenue. She viewed the collision through her front windshield, and was less than 100 yards away from the spot of the accident. Ms. Nottingham testified that Ms. Vertefeuille's ability to see Stephen was hampered by both the afternoon setting sun and the bushes and trees lining the church driveway. According to Ms. Nottingham, there is no view of the church driveway whatsoever until a driver on South Skyway Avenue is less than a car length away from the driveway's entrance. Ms. Nottingham corroborated Ms. Vertefeuille's testimony that the driveway for the church was lined by

---

[2]Stephen also testified that he was not coming out of the church driveway. However, it is undisputed that this testimony is incorrect. Both sides agree that Stephen was coming out of the church driveway at the time of the accident.

thick bushes and trees that were in excess of 5-6 feet tall. Ms. Nottingham described how the accident happened as follows:

> I observed the postal lady coming forward to me. I observed a person on a moped coming from the east, exiting the church driveway. I could see both of them simultaneously coming towards each other heading one, the mail lady into the north coming from the south, the young man coming from the east into the west and curving towards the north, and it was apparent that they were both going to come into each other into a V.
>
> * * * *
>
> [The scooter] had made it into the [northbound] lane and was headed directly into the north within a brief moment or two before the postal lady came up over the hill so, yes, it had reached the northbound lane and was directly center in the appropriate lane.
>
> * * * *
>
> I felt like I was in a movie. I saw the child hit directly center. I saw the scooter go under the Jeep. And I saw the boy thrown directly straight into the air and plop down directly on his legs and into the ground – into the pavement.
>
> * * * *
>
> The motor scooter didn't slow down. It also was coming down a slight grade at an angle so it was actually catching speed to hit the speed limit. So, no, it was accelerating.
>
> * * * *

See Deposition of Katherine Elizabeth Nottingham, pp. 5-6, 8 (Doc. 14, Ex. C).

Ms. Nottingham also confirmed that Ms. Vertefeuille did not take any evasive action because she did not have any opportunity to do so prior to the collision. Ms.

Nottingham also observed that Stephen was not wearing a helmet. Ms. Nottingham further testified that she was so concerned about the obstructed view caused by the shrubbery and trees lining the church driveway, that she met afterward with officials from the church on several occasions and ultimately convinced them to remove all of the shrubs and trees lining the driveway.

## Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying this standard, the Court must examine the materials on file and the record evidence "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). When faced with a "properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248, 106 S. Ct. at 2510. Moreover:

> If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved. Under those circumstances, which may be rare, the judge who is also the trier of fact may be warranted in concluding that there was or was not negligence, or that someone acted reasonably or unreasonably, . . . even if that conclusion is deemed "factual" or involves a "mixed question of fact and law." A trial on the merits would reveal no additional data. Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony. The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.

Nunez v. Superior Oil Co., 572 F.2d 1119, 1123-24 (5th Cir. 1978).[3]  This is such a case.

## **Discussion**

Ms. Baumgardner has filed suit against the United States under the FTCA, which permits recovery for property damage and personal injuries caused by a "negligent or wrongful act or omission" performed by a federal employee while acting within the

---

[3] Fifth Circuit decisions rendered prior to September 30, 1981 are binding precedent on this Court. Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1982).

scope of her employment. 28 U.S.C. § 2672. There is no dispute that Ms. Vertefeuille was acting within the course of her employment, and thus, the United States would be liable if she acted negligently.

To determine whether Ms. Vertefeuille was negligent in this case, the Court will apply Florida law – the law of the state where the accident occurred. See 28 U.S.C. § 2674. To establish negligence in Florida, Ms. Baumgardner must prove four elements: (1) that the defendant owed a "duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks," (2) that the defendant breached that duty; (3) that there is "[a] reasonably close causal connection between [the breach] and the resulting injury;" and (4) actual harm. Williams v. Davis, 974 So. 2d 1052, 1056 (Fla. 2007) (quoting Clay Elec. Coop., Inc. v. Johnson, 873 So. 2d 1182, 1185 (Fla. 2003)).

The United States argues, and this Court agrees, that the undisputed evidence shows that Ms. Vertefeuille did not breach any duty of care. She was operating her car at 20-25 miles per hour within the speed limit, was not distracted or impaired in any way, and was looking straight ahead. There was no opportunity for her to avoid the collision with Stephen because the driveway that Stephen emerged from was completely obscured by shrubbery and high trees. The testimony of both Ms. Vertefeuille and Ms. Nottingham confirm these facts, and Ms. Baumgardner has not presented any evidence to refute this testimony.

In her opposition, Ms. Baumgardner agrees that the facts are not in dispute. Instead, she argues that the facts should be construed to show a breach of care on the part of Ms. Vertefeuille. According to Ms. Baumgardner, the sun alone was blocking Ms. Vertefeuille's view, thereby creating a "special hazard" and calling into question whether Ms. Vertefeuille was able to properly navigate the roadway. This interpretation of the evidence is untenable – it does not take into account Ms. Vertefeuille's undisputed testimony that she was looking straight ahead, was not obstructed in any way from viewing the houses and the street, and that the only reason she did not observe the driveway was because of the thick shrubs and high trees. In fact, Ms. Vertefeuille was able to see Ms. Nottingham's car traveling towards Ms. Vertefeuille on the opposite side of South Skyline Avenue. The Plaintiff's interpretation also does not take into account Ms. Nottingham's testimony that the driveway – and in particular Stephen traveling on the driveway towards South Skyline Avenue – could not be observed by anyone driving on South Skyline Avenue because of the shrubbery and high trees. To be sure, Ms. Nottingham mentioned the setting sun and testified that the sunlight would have impaired Ms. Vertefeuille's sight; but that merely described the existing conditions. Ms. Baumgardner has not presented any evidence suggesting that Ms. Vertefeuille was driving negligently under those conditions.[4]  Moreover, Ms.

---

[4] The Court also notes that Ms. Baumgardner has not presented any decisional authority suggesting that a setting sun or sunlight constitutes a "special hazard" for which Ms. Vertefeuille was obligated to take some sort of action under Florida law.

Baumgardner appears to ignore the undisputed testimony of Ms. Nottingham that Stephen was accelerating as he traveled down the driveway, and did not stop before entering South Skyline Avenue directly into Ms. Vertefeuille's path.[5]

While the Court is sympathetic to Stephen's injuries, taking the evidence in the light most favorable to Ms. Baumgardner, the Court finds that the undisputed facts demonstrate that Ms. Vertefeuille did not breach any duty of care.  Simply put, this is a case where Stephen darted out of an obscured driveway into Ms. Vertefeuille's path, and there is no evidence suggesting that Ms. Vertefeuille could have avoided this accident.  As such, there is no basis for recovery from the United States.  See Alessi v. Farkas, 118 So. 2d 658, 661 (Fla. 2d DCA 1960) ("[W]e are concerned with a motorist traveling through a residential neighborhood in the proper lane of the street at a reasonable rate of speed when struck by another vehicle which had been abruptly backed out from a private driveway across one lane of the street and into the plaintiff's lane of traffic.  So, although the plaintiff was charged with the responsibility of having her vehicle under control at all times commensurate with the circumstances and the locale, this court is not able to hold that she was under a duty to look into each of the numerous driveways along both sides of a residential street in order to avoid colliding

---

[5] Because the Court finds that Ms. Vertefeuille did not breach any duty of care, the Court need not reach the question of contributory or comparative negligence. However, the Court notes that Fla. Stat. § 316.125 requires drivers of vehicles, including motor scooters, who are about to enter or cross a highway from a private road or driveway to yield the right-of-way to all vehicles approaching on the highway.

with a reckless party who may back an automobile into plaintiff's path."). See also LeFante v. Miami Air Conditioning Co., 111 So. 2d 725 (Fla. 3rd DCA 1959) (holding that a motorist has no duty to look-out premised on an assumption that other vehicles could be expected in the wrong traffic lane).

## Conclusion

Accordingly, upon due consideration, it is hereby ORDERED that the United States of America's Motion for Summary Judgment (Doc. 14) is GRANTED. The Clerk is directed to enter judgment in favor of the United States and against the Plaintiff as to all claims asserted against the United States (Counts I and II). The Court previously dismissed all claims against Tina Vertefeuille (Doc. 11), and the Clerk is further directed to enter judgment in her favor and against the Plaintiff as to Count III of the Complaint (Doc. 1). The Clerk is also directed to terminate all other pending motions and to close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 1st day of February, 2013.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record
Maurya McSheehy